Argued October 12, decided October 26, 1909; rehearing denied January 18, 1910.

## STATE v. LANGWORTHY.

[104 Pac. 424 ; 106 Pac. 336.]

CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS—INITIATIVE AMENDMENT.

1. The initiative amendment to the constitution, reserving to the people the power to propose laws and amendments to the constitution, and to enact or reject the same at the polls, independent of the legislative assembly, and providing that not more than 8 per cent of the legal voters shall be required to propose any measure ; that every such petition shall include the full text of the measure proposed ; that initiative petitions shall be filed with the Secretary of State not less than four months before election ; that any measure referred to the people shall take effect when approved by a majority of the votes cast ; that petitions for the initiative shall be filed with the Secretary of State, and in submitting the same to the people he, and all other officers, shall be guided by the general laws until legislation shall be especially provided therefor—is self-executing, and supplemental laws are not a prerequisite to its effectiveness, but the people may proceed in accordance therewith until aided by such additional enactments as may be provided.

CONSTITUTIONAL LAW—REPEAL OF INCONSISTENT PROVISIONS.

2. The initiative amendment to the constitution necessarily carried with it all powers essential to make its provisions effective, and any part of the constitution previously in force, inconsistent therewith. was necessarily repealed.

STATUTES—EXPRESSION OF SUBJECT IN TITLE.

3. Constitution of Oregon, Art. IV, Section 20, requiring the subject of an act to be expressed in its title, does not extend to laws enacted directly

by the people, except to the extent that it may not be inconsistent with the general purpose of the initiative and referendum amendment to the constitution.

STATUTES—EXPRESSIONS OF SUBJECT OF ACT IN TITLE.

4. If it be conceded that the limitation by Act February 24, 1903, (Laws 1903, p. 246, Section 6), to 20 words for designation of the title of a proposed law to be placed upon the ballot is unconstitutional, it would not necessarily invalidate the remainder of the act; for such act, when construed with the initiative amendment to the constitution, is ample, without such provision, to permit a brief, but·proper, designation on the ballot of the proposed law.

STATUTES — EXPRESSION OF SUBJECT IN ·TITLE — LAWS ENACTED UNDER INITIATIVE.

5. Act February 24, 1903 (Laws 1903 p. 244), to make more effective the initiative and referendum amendment to the constitution, provides, by Section 2, the form of submitting a petition for the enactment by the people of any law, and that "every such sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure." Section 5 provides that upon the filing of a petition with the Secretary of State he shall notify the Governor, who shall issue his proclamation that the petition has been filed, with a brief statement of its tenor. Section 6 requires the Secretary of State to furnish county clerks the title of each measure to be voted upon, not to exceed 20 words, to be printed on the ballot. Section 8 requires the Secretary of State to print in pamphlet form the title and text of each measure to be submitted, and allows the persons filing a petition for the initiative to place with the Secretary for distribution any pamphlets advocating such measure, and requires the Secretary to send the pamphlet published by him, together with those containing the arguments in support thereof, to the county clerks in sufficient numbers to supply one to each registered voter, and that every registration officer shall deliver a copy of such pamphlet to each voter. .*Held*, that the designation of the title of a proposed law on the ballot as "local option liquor law" was sufficient to convey to the average voter the general tenor of the subject to be voted on, and a compliance with the initiative amendment to the constitution supplemented by the act of 1903.

INDICTMENT AND INFORMATION—NECESSITY OF INDICTMENT—CONSTITUTIONAL PROVISIONS.

6. Amendment to Constitution of Oregon, adopted June 1, 1908, providing that no person can be tried for a crime in the circuit court without having first been indicted by a grand jury, etc., did not repeal Constitution of Oregon, Art. VII, Sections 1, 9, delegating to the legislature the power to ·create inferior courts with limited jurisdiction, and creates no changes in laws not expressly nor impliedly provided for, and local option act (Laws 1905, p. 48, § 15) giving justice courts concurrent jurisdiction with circuit courts for violations of the act, being consistent with Article VII, Section 1, and Section 2264, B. & C. Comp., providing that a criminal proceeding in a justice court shall be commenced by filing a complaint, and Section 2265 providing that "the complaint is to be deemed an indictment under the Code," the constitutional amendment of June 1, 1908, will be construed to apply only to trials originating in the circuit court, and one accused of violating the local option act may be prosecuted in the circuit court on complaint issued out of a justice court.

From Tillamook: WILLIAM GALLOWAY, Judge.

The defendant, W. Langworthy, was tried and convicted of violating the local option law and from a judgment and sentence to pay a fine he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Holmes & Handley* and *Messrs. Talmage & Johnson* with oral arguments by *Mr. Webster Holmes* and *Mr. Sidney S. Johnson.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, *Mr. John H. McNary,* District Attorney, *Mr. William H. Cooper,* Deputy District Attorney, and *Mr. H. T. Botts,* with an oral argument by *Mr. Walter C. Winslow,* Deputy District Attorney.

MR. JUSTICE KING delivered the opinion of the court.

Defendant was charged with violating the local option liquor laws (Laws 1905, p. 41) in Tillamook County, and upon trial was convicted, and from a sentence to pay a fine, prosecutes this appeal.

1. At the trial his counsel requested the court to instruct the jury that the evidence adduced conclusively established that the local option law had never been· adopted in the State of Oregon, in that the title thereto was never certified by the Secretary of State to the various county clerks, and was not placed upon the ballots used in the June, 1904, election at which the act was voted upon, and to find the defendant not guilty by reason thereof, the denial of which request constitutes the only error assigned and relied upon. In support of this contention it is argued that, for the reasons stated in the requested instruction, the local option law was not adopted, either in conformity with the requirements of the law of 1903 (Laws 1903, p. 244), enacted for the purpose of making more effective the initiative and ref-

erendum amendments, or with Article IV, Section 20, of the Constitution of the State, which provides:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. * *"

Pursuant to the act of 1903 the Secretary of State certified to each of the county clerks the abbreviated title furnished him by the "committee or organization presenting and filing with him the act" for the purpose of having the same appear upon the ballot, and in accordance therewith the law was designated on all ballots thus:

For local option liquor law.
Vote Yes or No.

300. Yes.
301. No.

The full title of the local option act, as presented and adopted through the initiative at the general election in 1904, is as follows:

"To propose by initiative petition, a law providing for elections in any county, or any precinct therein, or any subdivision of a county consisting of any number of entire and contiguous precincts of such county, to determine whether the sale of intoxicating liquors shall be prohibited in such county or subdivision thereof or in such precinct; providing for the filing of petitions for such elections and the form and effect thereof, and for notices of such elections and for the time and manner of holding and conducting the same; declaring what shall constitute a subdivision of the county within the meaning of this law; declaring what acts shall and what shall not constitute a violation of this law; declaring the qualifications of petitioners and of electors at such elections; applying to such election the provisions of sections 1900, 1901, 1902, 1903, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911, 1912, and 1975 of Ballinger and Cotton's Annotated Codes and Statutes of Oregon; providing for printing and distributing ballots for such elections; prescribing the duties of public officers in relation to such elections and in relation to the enforcement of the provisions of

this law; providing for the issuance by the county court of orders prohibiting the sale of intoxicating liquors within certain limits and declaring the duties of such courts in reference thereto; limiting the time within which the question of prohibiting such sale of intoxicating liquors may again be submitted to vote in the same district; providing penalties and punishment for the violation of any of the provisions of this law; providing for the return to any liquor dealer or other person of a proportionate amount of any license fee which he may have paid, whenever the district in which he shall be engaged in business shall be declared to be prohibition territory; and applying to all elections held under the provisions of this law the provisions of the general election laws of the State, and declaring certain rules of evidence applicable to prosecutions under this act."

The act of 1903 was passed by the legislative assembly, and had for its object "making effective the initiative and referendum provisions," the constitutionality of which act, including the sufficiency of its title, was upheld in *State ex rel. v. Richardson,* 48 Or. 309 (85 Pac. 225: 8 L. R. A. [N. S.] 362), although the features here presented were not suggested on appeal in that case. See, also, *State v. Cochran,* 55 Or. 157 (104 Pac. 419).

Appellant's position, briefly stated, is that since, as held in *Straw v. Harris,* 54 Or. 424 (103 Pac. 777, 780), the people, under the initiative and referendum, constitute one of the branches of the legislative department of the State, with full power to enact laws independent of the legislative assembly, they become a separate and distinct legislative body, of which the same formality is required to enact a law as is exacted of the legislature by Article IV, Section 20, of our fundamental law, and that the heading placed upon the ballot, "For local option liquor law," was not the title of the act, for which reason it is insisted that the law was not regularly enacted; hence is void. A prominent feature, overlooked in the premises from which defendant's conclusion on this point is deduced, is that the right of the people to legislate

directly—other than by adopting constitutional provisions —in place of relying solely on their representatives, was by them secured or reserved through the initiative and referendum amendments to the constitution; and, as stated by Mr. Justice MOORE, in *State ex rel.* v. *Richardson*, 48 Or. 309 (85 Pac. 225: 8 L. R. A. [N. S.] 362), "The validity of laws adopted at the polls must be determined, like enactments by the legislative assembly, by the test of the constitution as modified by amendments thereto." If the act adopted in 1903 for the purpose of facilitating operations under the initiative amendment is not in conflict or inconsistent with such amendment, it must follow that the law is valid, and that any proceedings had in conformity therewith are ample.

The initiative amendment, so far as it bears on the points here involved, reads:

"The legislative authority of the State shall be vested in a legislative assembly, consisting of a senate and house of representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly. * * The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon. * * Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise. * * Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor."

It is manifest from the provisions of this amendment that it was intended to be self-executing; that is, its

provisions were designed to become effective without awaiting legislative aid. Under such circumstances supplemental laws are not a prerequisite to the effectiveness of a constitutional provision, and the people may proceed in accordance therewith until aided by such additional enactments as the lawmaking department of the State may provide. *Stevens* v. *Benson*, 50 Or. 269 (91 Pac. 577).

2. In this instance the power to enact laws in aid of the constitutional provisions, and to make them more effective, is expressly granted in the initiative amendment itself, with reference to which it is only necessary that such laws shall not be inconsistent with the general purpose and spirit of the amendments, and that they be in harmony with the constitution when construed as a whole. And in determining this matter it must be kept in mind that the addition of this amendment to our organic laws necessarily carried with it all powers essential to make its provisions effective, and any part of the constitution previously in force, so far as in conflict or inconsistent therewith, was by its adoption necessarily repealed.

3. Article IV, Section 20, of the Constitution, was intended to apply to acts introduced before the legislative assembly. To that extent it is still in force, and is unaffected by the amendments under consideration, but under no rule of construction can it be held applicable to laws enacted directly by the people, except to the extent that it may not be inconsistent with the general object and purpose of the initiative and referendum amendment. Pursuant to the adoption of the initiative amendment, and the power granted thereby, the legislature of 1903 enacted the laws above mentioned, and this act, so far as in harmony with the constitution as amended, is effective, and must be followed. *Stevens* v. *Benson*, 50 Or. 269, 274 (91 Pac. 577) ; *Palmer* v. *Benson*,

50 Or. 277 (91 Pac. 579). It remains, then, to be seen whether the proceedings complained of with reference to the adoption of the local option liquor law come within the requirements of this act.

Section 2, page 244, of the act of 1903, enacted for the purpose of facilitating the enforcement of the initiative and referendum, provides the manner and form of submitting the petition for the enactment of the people of any law, and adds that "Every such sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed by the initiative petition. * *" The act also requires that the clerk of the county in which such petition shall be signed shall compare the signatures of the petition; attach thereto his certificate to the Secretary of State verifying the same, whereupon such cerificate shall be deemed *prima facie* evidence of the facts stated therein; that the Secretary of State verify the petition and certify to its correctness; that he shall then furnish to the various county clerks of the State the title for each act to be voted upon, not to exceed 20 words, which title shall be printed on the ballot in the order in which the acts are referred to the people; that all petitions by the people shall be filed in his office; and that the Secretary shall, not later than the first Monday of the third month next before any general election at which any proposed law or amendment to the constitution is to be submitted to the people, cause to be printed in pamphlet form a true copy of the title and text of each measure to be submitted, with the number and form in which each question is to be printed upon the official ballot. And in further explanation of the measures thus proposed the persons, committees, or duly authorized officers of any organization filing any petition for the initiative were granted the right to place with the Secretary of State for distribution any pamphlets advocating such measure, not later than the first Mon-

day of the fifth month before the regular general election at which the measure was to be voted upon. Like privileges were also given to any person, committee, or organization opposing such measure. It was also provided that upon filing the petition for the initiative or referendum with the Secretary of State, signed by the requisite number of registered voters, the Secretary should notify the Governor thereof in writing, whereupon the Governor was required forthwith to issue his proclamation announcing that such petition had been filed, with a brief statement of its tenor and effect, which proclamation was required to be published four times in four consecutive weeks in one daily or weekly newspaper in each judicial district of the State. The Secretary of State was also required to send the pamphlet published by him, together with those containing the arguments alluded to, bound therewith, to the county clerks of each of the counties of the State in sufficient numbers to supply one to each registered voter; and every registration officer, after receipt thereof from the county clerk, was required to deliver a copy of such pamphlet to each voter as he registered. The provision of this act with reference to the filing and distribution of these pamphlets was amended in 1907 (Laws 1907, p. 398), by which it was required that a copy of the pamphlet containing the information referred to be sent by the Secretary direct to each voter in the State prior to the election, but the laws under consideration having been adopted prior thereto, the effect and sufficiency thereof must be determined with reference to the act of 1903 only.

4. It is argued that the limitation in the act to 20 words for the designation of the title of the proposed law on the ballot is unconstitutional, in that in some instances, including the one under consideration, it is impossible to designate a sufficient title for the act in so few words, and that the amendments contemplated that the full title

of the proposed measure be placed upon the ballot. If it be conceded that the 20-word limitation is in violation of our fundamental laws upon the subject, it would not necessarily invalidate the remainder of the act, for the reason that the law, when construed in' connection with the amendments alluded to, is ample, without this provision, to permit a brief, but proper, designation on the ballot of the proposed measure. There is nothing in the constitution as amended implying that the full title as appears in the proposed measure shall appear upon the ballot, nor does the act under consideration so require. The method provided is adequate to identify the bill, as indicated on the ballot, with the proposed measure on file in the office of the Secretary of State, the full title and text of which appear in the pamphlets, a copy of which, under the law in force at the time the local option law was voted on, was presumably in the hands of each voter. The method then in use, and as since improved upon, was, and is, analogous to the proceeding before the legislative assembly. There, before the roll call for voting on a proposed measure is had, the presiding officer announces that "We are about to vote on House (or Senate) Bill No. 104," or whatever number the bill may have, which number as thus announced identifies the bill to be voted upon with the printed bill on the desk of each member. True, the title is previously read, as is the entire bill, and so it is presumed to have been previously read by each voter under the initiative system.

5. The only question, then, to determine, is: Does the title as designated and used on the ballot come within the purview of the constitution as amended and supplemented by the act of 1903? We think it does. The words "local option liquor law" were sufficiently clear to convey to the average voter the general tenor of the subject to be voted upon. Aside from the published proclamation of the Governor, each voter was presumably furnished by

the officer before whom he registered with a pamphlet containing the true copy of the title, and a full text of the proposed measure, and the title thereon as presented by the petitioners was ample to identify the proposed measure as indicated on the ballot, with the same measure published in the distributed pamphlet. As above stated, the title of a bill before the legislative assembly is required to be read with the measure to be voted upon, and the full title is presumed to appear thereon. This method under the initiative would be impracticable; for, as manifest from the length of the title of the act under consideration, if many measures should be submitted to the voters at one time, to print upon the ballot a full title to each would require the ballot to contain many pages of printed matter, which cumbersome method was plainly intended to be avoided. To recognize the rule invoked by appellant would defeat the very purpose contemplated by the adoption in our fundamental laws of our direct, and additional, system of lawmaking. The system provided, as above considered, was obviously designed to take the place of that employed by the legislature, and accomplishes the same result. The entire constitution must be construed together, to do which necessitates holding Article IV, Section 20, applies to bills before what is known as the legislative assembly, and to proposed acts before the people, only in so far as consistent with the tenor and purview of the laws subsequently contained in and permitted by the constitutional amendments under consideration, while the initiative and referendum has reference to bills enacted or rejected, as the case may be, directly by the people, and not through the legislative assembly.

A careful examination of the bill of exceptions discloses that the local option law was submitted to the voters of the State in strict conformity with the mandates of the constitution as amended, and acts supplemental thereto

and in aid thereof, and, having received a majority of the votes cast at the general election at which it was submitted, accordingly became a law of the State; and, having subsequently become in force in Tillamook County by the method provided in the general local option law, and prior to the date of the commission of the misdemeanor charged, no error appears in the record, from which it follows that the judgment of the trial court must be affirmed, and it is so ordered.                AFFIRMED.

Decided January 18, 1910.

## ON MOTION FOR REHEARING.

[106 Pac. 336.]

MR. JUSTICE KING delivered the opinion of the court.

6. The only point presented in the petition for rehearing, not fully met and determined in our former opinion, and which at this time merits consideration, is whether the trial of defendant, on a complaint issued out of the justice court, was in violation of our fundamental laws. This question was not presented at the former hearing, but, appearing to be submitted in good faith, it will be considered. The amendment to the constitution, adopted June 1, 1908, provides that no person shall be tried for a crime in the circuit court, without having first been indicted by a grand jury, etc. It will be observed that this provision is limited to trials in the circuit court, and we are of the opinion has reference only to trials originating there. It contains no language indicating an intent to repeal other provisions of the constitution, such as Article VII, Sections 1 and 9, delegating to the lawmaking department the power to create inferior courts with limited jurisdiction. Nor is there any expression from which it may be inferred it was intended that the laws then in force, governing the practice and prescribing the jurisdiction of justice courts, were intended to

be repealed; and, in the absence thereof, the amendment, under all rules of construction, is limited to the changes there either expressly or impliedly provided for. Construing, therefore, this amendment, in connection with other provisions in force, we find that Article VII, Sections 1 and 9, of the Constitution, give to the lawmaking departments the power to create such inferior courts with limited judicial powers. The latter section provides that powers, not vested by the constitution or laws consistent therewith exclusively in some other court, shall belong to the circuit court. The laws, giving to justices of the peace concurrent jurisdiction in misdemeanors, where the fine or jail sentence does not exceed that provided in the local option act, are clearly consistent with Article VII, Section 1; and such was the local option act (Laws 1905, p. 48, § 15), which expressly gives to justice courts concurrent jurisdiction with circuit courts for all violations of the act. Section 2264, B. & C. Comp., provides that a criminal proceeding in the justice court shall be commenced by filing a complaint, and, section 2265, that "the complaint is to be deemed an indictment" under the Code. It is clear, therefore, when construing the constitution as a whole, that the necessity for a trial by indictment found by a grand jury is limited to such cases, the importance of which demands that they may be, and are, tried in the first instance in the court there mentioned. To hold otherwise would, in effect, be to declare the amendment of 1908 to have been intended to give justice courts jurisdiction to try civil cases only, and to limit the jurisdiction of such courts, in all criminal matters, to the hearing of charges on information, where they might bind the accused over to await the action of the grand jury, even though the charges might consist only of misdemeanors of the most trivial kind, and thereby to burden the circuit courts with the trial of all minor offenses; or else

to hold that a person may be legally tried under a complaint in the justice or police court, and at the same time extend to the accused the privilege, by exercising the right of appeal, of invalidating the charge. That such extraordinary legislative generosity was not intended is self-evident.

The petition is denied.

AFFIRMED: REHEARING DENIED.